```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

KENNETH M.,

                     Plaintiff,

v.                                                        1:20-CV-1024
                                                           (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.

_____

APPEARANCES:                                           OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC      ELIZABETH HAUNGS, ESQ.
  Counsel for Plaintiff                               KELLY LAGA-SCRIANDRA,
6000 North Bailey Ave, Ste. 1A                   ESQ.
Amherst, NY 14226                                    KENNETH HILLER, ESQ.

U.S. SOCIAL SECURITY ADMIN.                    ARIELLA ZOLTAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 17.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is granted in part, to the extent it seeks remand for further proceedings, and denied in part, and the Commissioner's motion is granted in part and denied in part.

I.     **RELEVANT BACKGROUND**

   A.     **Factual Background**

Plaintiff was born in 1982.  (T. 68.)  He received his GED.  (T. 162.)  Generally, Plaintiff's alleged disability consists of "torn biceps," shoulder impairment, and arm impairment.  (T. 161.)  His alleged disability onset date is October 1, 2015.  (T. 68.)

   B.     **Procedural History**

On October 28, 2016, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  (T. 68.)  Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  On January 28, 2019, Plaintiff appeared before the ALJ, Anthony Dziepak.  (T. 32-67.)  On June 24, 2019, ALJ Dziepak issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 12-31.)  On June 11, 2020, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

   C.     **The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 17-27.)  First, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 28, 2016.  (T. 17.)  Second, the ALJ found Plaintiff had the severe impairments of: anxiety related disorder; depressive disorder; alcohol use disorder; right shoulder disorder status post-surgery; and chronic venous insufficiency of the lower extremities.  (*Id*.)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20

C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 18.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a).  (T. 20.)[1]  The ALJ further found Plaintiff:

> must avoid overhead reaching with the right upper extremity, but can frequently reach in all other directions, as well as frequently handle with right upper extremity.  [Plaintiff] must avoid climbing ladders, ropes, and scaffolds, as well as crawling or balancing on wet, uneven, or vibrating surfaces.  While he can engage in no pushing/pulling or operation of foot controls, he can occasionally crouch and kneel.  Mentally, [Plaintiff] is able to perform simple repetitive work tasks involving no public interaction or team/tandem collaborative type work with coworkers.  He can occasionally interact with supervisors.  Finally, [Plaintiff] is able to make simple work-related decisions and adapt to simple changes in a routine work setting.

(*Id*.)  Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 25-27.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to adequately address and resolve the conflict between reaching limitations in his RFC and the Dictionary of Occupational Titles ("DOT").  (Dkt. No. 14 at 15-20.)  Second,  Plaintiff argues the ALJ's assessment of Plaintiff's psychiatric limitations in not substantially supported and the ALJ provided conflicting assessment of the evidence.  (*Id*. at 20-24.)  Third, and lastly,

---

[1]   Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 416.967(a).

3

Plaintiff argues the ALJ failed to properly evaluate a treating opinion. (*Id*. at 24-30.) Plaintiff also filed a reply in which he reiterated his original arguments. (Dkt. No. 16.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues Plaintiff failed to identify a conflict between vocational expert's testimony and the DOT, and the ALJ's step five finding is therefore supported by substantial evidence. (Dkt. No. 15 at 8-11.) Second, and lastly, Defendant argues substantial evidence supports the ALJ's mental RFC finding. (*Id*. at 11-28.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

(1) whether the claimant is currently engaged in substantial gainful activity;
(2) whether the claimant has a severe impairment or combination of

impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.  ANALYSIS

### A.  RFC Determination

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1)[2]. An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ. *Id*. § 416.927(d)(2). The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id*. §§ 416.927(d), 416.945(a)(3), 416.946(c). Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity. *Id*. §§ 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c).

#### a.  Mental RFC

Plaintiff argues the ALJ's assessment of the evidence and medical opinions was inconsistent and lacked support. (Dkt. No. 14 at 20-24.) Specifically, Plaintiff argues

---

[2] Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs"). Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

6

the ALJ's assessment of consultative examiner Janine Ippolito, Psy.D.'s opinion was inconsistent, and the overall evidence supported greater limitations than provided by the ALJ. (*Id*.) Plaintiff further argues the ALJ erred in his assessment of the opinion of treating social worker, Tiffany Cronin. (*Id*. at 22) For the reasons outlined below, the ALJ properly assessed the mental health evidence, including opinion evidence, in formulating his RFC.

On March 21, 2019, Dr. Ippolito examined Plaintiff and provided a medical source statement. (T. 1045-1048.) She opined, in relevant part, Plaintiff had marked limitations in his ability to regulate emotions, control behavior and maintain well-being. (T. 1047.) Dr. Ippolito opined Plaintiff had mild to moderate limitations in all other areas of mental work-related functional abilities. (*Id*.)

The ALJ afforded Dr. Ippolito's opinion "partial weight." (T. 23.) The ALJ concluded her opinion was consistent with evidence in the record of moderate mental health symptoms and she personally examined Plaintiff. (*Id*.) However, the ALJ reasoned the doctor's "marked limitations are not consistent with the evidence of record." (*Id*.) The ALJ concluded, "[a]s such, the undersigned affords this opinion great weight." (*Id*.)

To be sure, the ALJ stated he afforded Dr. Ippolito's opinion both "partial" and "great" weight. (T. 23.) Plaintiff asserts this cannot be a mere typographical error. (Dkt. No. 14 at 21.) Plaintiff is incorrect. The ALJ's rationale can be inferred from his written decision. *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (although the ALJ did not describe in detail her rationale, we can infer from the decision that she attributed "great weight" to the opinion because she found it most consistent with the record as a

whole).  The ALJ's written decision indicates the ALJ found Dr. Ippolito's mild to moderate limitations consistent with the record and the mental RFC reflects those limitations.  The ALJ did not adopt Dr. Ippolito's marked limitations, finding them inconsistent with the record.  Because the ALJ's assessment of Dr. Ippolitio's opined limitations can be inferred from the written decision, any error in affording the opinion varying weights was harmless.

Next, Plaintiff argues the ALJ erred in evaluating the opinion evidence provided by Dr. Ippolito and treating therapist Ms. Cronin because the ALJ "provided very little support to justify why Plaintiff did not have greater limitations."  (Dkt. No. 14 at 22.)  Plaintiff proceeds to list evidence in the record he asserts supported greater limitations.  (*Id*. at 22-24.)  Here, the ALJ properly assessed Ms. Cronin's opinion and substantial evidence supported his mental RFC determination.

First, the ALJ properly afforded little weight to Plaintiff's treating social worker, Ms. Cronin.  (T. 24.)  Although Ms. Conin may have been a treating source, not all treating sources are acceptable medical sources under the regulations.  A "treating source" is defined as the plaintiff's "own physician, psychologist, or other acceptable medical source who provides [plaintiff], or has provided [plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [plaintiff]."  20 C.F.R. §§ 404.1502, 416.902.  There are five categories of "acceptable medical sources." 20 C.F.R. §§ 404.1513(a), 416.913(a).  Social workers are listed among the "other medical sources," whose opinion may be considered as to the severity of a plaintiff's impairment and ability to work, but their conclusions are not entitled to any special weight. 20 C.F.R. § 416.913(d)(1).  Although an ALJ is "free to consider the

opinions of these 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008).

In a letter dated January 22, 2019, Ms. Cronin indicated Plaintiff received mental health treatment once a week for six weeks. (T. 1032.) She stated Plaintiff's "mental health conditions impede his ability to obtain and maintain gainful employment at this time." (*Id*.) The ALJ concluded her statement was "vague and conclusory," inconsistent with the record, she failed to provide an explanation of functional limitations, and the ultimate determination of disability is reserved to the Commissioner. (*Id*.) As stated by the ALJ, the ultimate finding of whether Plaintiff was disabled and cannot work is "reserved to the Commissioner." 20 C.F.R. § 416.927(d). Therefore, the ALJ properly assessed Ms. Cronin's opinion.

Second, although Plaintiff provides evidence in the record that may support his assertion of greater limitations, substantial evidence supported the ALJ's mental RFC determination and therefore the ALJ's determination is upheld. In general, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Substantial evidence "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Plaintiff must show that no reasonable factfinder could have reached the ALJ's

conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).  Plaintiff fails to show no reasonable factfinder could have reached the ALJ's determination.

In formulating the mental RFC, the ALJ relied on medical opinion evidence in the record provided by consultative sources.  It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e).

The ALJ afforded "great weight" to consultative examiner, Kristina Labarbera, Psy.D.  (T. 22.)  Dr. Labarbera examined Plaintiff in March of 2017 and opined he had no limitations in his ability to understand, remember, or apply simple directions and instructions, sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire, and be aware of normal hazards and take appropriate precautions. (T. 397.)  She further opined Plaintiff had mild limitations in his ability to use reason and judgment to make work-related decisions and regulate emotions, control behavior, and maintain well-being.  (*Id*.)  Lastly, she opined he had moderate limitations in his ability to

understand, remember, or apply complex directions and instructions, and interact adequately with supervisors, co-workers, and the public. (*Id*.)  The ALJ's RFC limiting Plaintiff to simple, routine, repetitive work with additional social limitations in supported by Dr. Labarbera's opinion of, at most, moderate limitations.  *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see Whipple v. Astrue*, 479 F. App'x. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment); *see Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) ("The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress. These limitations are incorporated into the RFC, which limits plaintiff to simple routine tasks in a low stress, low contact environment.").

      As outlined above, the ALJ also relied on Dr. Ippolito's opined mild to moderate limitations; however, the ALJ did not find her marked limitations consistent with the record and therefore did not adopt them in the RFC.  (T. 23.)  The ALJ lastly afforded great weight to the opinion of State agency medical consultant, T. Bruni, Psy.D.  (Id.)  Dr. Bruni opined Plaintiff's psychiatric impairments were "moderate," and he retained the ability to "perform simple jobs, requiring brief, superficial contact with others." (T. 75.)

In addition to the medical opinion evidence in the record, the ALJ relied on objective medical observations and treatment notations in formulating Plaintiff's mental RFC.  The treatment notes from Chautauqua Medical Services generally reveal findings of cooperative attitude, normal affect, articulate and fluent speech, and intact memory, attention, and concentration.  (T. 709, 712, 717; *but see* T. 814 (mixed findings of ruminating thought content, dramatic affect, depressed mood, and anxious behavior, but normal memory, fair insight, normal eye contact, and goal-directed thought processes).)

Plaintiff sought mental health treatment at Lakeside Clinic in December 2017.  (T. 531-551.)  At an initial screening performed on December 8, 2017, Plaintiff demonstrated restless behavior and guarded attitude, but good eye contact, normal thought content, clear thought processes, euthymic mood, and fair to good insight and judgment.  (T. 537.)  A psychiatric evaluation performed at the Lakeside Clinic on December 26, 2017, revealed guarded but cooperative attitude, clear and goal directed thought processes with some evidence of hypervigilance and paranoia, depressed mood, guarded and restrictive affect, and fair insight and judgment.  (T. 544.)  Plaintiff attended a few follow up sessions at Lakeside Clinic in early 2018, and demonstrated pleasant and cooperative behavior, positive eye contact, clear speech, neutral mood, restricted affect, and goal directed thought processes.  (T. 547, 549.)  However, Plaintiff was discharged from the Lakeside Clinic in June 2018 after he failed to comply with his appointments and occasionally showed up intoxicated.  (T. 531, 535.)  The ALJ recognized the record showed mixed clinical findings, but reasonably concluded that the record as a whole showed no more than mild to moderate clinical abnormalities.  (T. 20.)

Overall, the ALJ properly assessed opinion evidence concerning Plaintiff's mental limitations. The ALJ relied on the record as a whole including opinion evidence and clinical findings in formulating the mental RFC determination.

### b.  Physical RFC and Treating Physician

Plaintiff argues the ALJ failed to follow the treating physician rule in assessing the opinion of David DiMarco, M.D. (Dkt. No. 14 at 25.) For the reasons outlined below, the ALJ properly assessed Dr. DiMarco's opinion.

Under the treating physician rule, the opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). When assigning less than "controlling weight" to a treating physician's opinion, the ALJ must "explicitly consider" the four factors announced in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (internal quotation marks omitted). Those factors, referred to as "the *Burgess* factors," are "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella,* 925 F.3d at 95-96 (citation omitted); 20 C.F.R. § 416.927(c)(2).

To be sure, a reviewing court should remand for failure to consider explicitly the *Burgess* factors unless a searching review of the record shows that the ALJ has provided "good reasons" for its weight assessment. *Estrella*, at 96; *see Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) ("While the ALJ here did not always explicitly

consider the *Burgess* factors when assigning the treating physician' opinions less than controlling weight, we nonetheless conclude that the ALJ provided sufficient "good reasons" for the weight assigned."). However, not all statements made by treating sources must be examined under the treating physician rule. A bald statement that a plaintiff is "disabled" represents an administrative finding, not a medical opinion and therefore not subject to the treating physician rule. *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 77 (2d Cir. 2018).

In a letter dated January 7, 2019, Dr. DiMarco outlined Plaintiff's venous disease treatment modalities. (T. 870.) The doctor stated, "in my professional opinion, [Plaintiff's] symptoms are causing enough functional impairment to deem the patient disabled, meeting required criteria of Americans with Disabilities Act." (*Id*.) Dr. DiMarco repeated his opinion in another letter dated January 24, 2019, adding Plaintiff's "disability is total and permanent." (T. 1028-1029.) Dr. DiMarco's statements not subject to the treating physician rule because the statements represent an administrative finding, not a medical opinion. *Trepanier,* 752 F. App'x at 77. Therefore, the ALJ did not commit legal error in failing to apply the *Burgess* factors to the doctor's statement.

Although the ALJ was not required to weigh Dr. DiMarco's statements under the treating physician rule, the ALJ nonetheless considered and weighed his opinions. The ALJ afforded Dr. DiMarco's opinions "little weight." (T. 25.) The ALJ reasoned the statements were inconsistent with evidence in the record that reflected "only moderate pain symptoms and mild to moderate objective signs." (*Id*.) The ALJ also reasoned the opinion was "conclusory" and the doctor failed to provide an explanation as to what

14

functional limitations Plaintiff was experiencing or how they caused him to be disabled. (*Id*.) Lastly, the ALJ concluded the ultimate determination of disability is reserved to the Commissioner. (*Id*.) Therefore, the ALJ considered Dr. DiMarco's statements and provided reasoning for not adopted the doctor's conclusion that Plaintiff was disabled.

Because Dr. DiMarco's statements went to the ultimate issue of disability, which is reserved to the Commissioner, the ALJ was not obligated to assess the statements under the treating physician rule.

### B. Conflict Between Vocational Expert Testimony and the Dictionary of Occupational Titles

Plaintiff argues the ALJ failed to elicit vocational expert ("VE") testimony regarding reaching limitations and did not resolve a conflict between the RFC and the Dictionary of Occupational Titles ("DOT"). (Dkt. No. 14 at 15-20.) For the reasons outlined below, remand is required to resolve a conflict between VE testimony and the DOT.

Here, there is an apparent unresolved conflict between the VE's testimony, that Plaintiff could perform certain occupations that require frequent reaching, and the ALJ's RFC assessment limiting Plaintiff to no reaching with the right upper extremity. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2d Cir. 2019) ("Testimony that a claimant with overhead reaching limitations is capable of performing a job that the *Dictionary* describes as requiring 'reaching,' then, creates at least an *apparent* conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony."); *see Gonzalez-Cruz v. Comm'r of Soc. Sec.*, 294 F. Supp. 3d 164, 192 (W.D.N.Y. 2018) (ALJ and VE failed to acknowledge conflict between testimony and DOT and no attempt was made to resolve the conflict).

The ALJ determined Plaintiff "must avoid overhead reaching with the right upper extremity, but can frequently reach in all other directions." (T. 20.)   At Plaintiff's hearing, the ALJ asked the VE to consider a hypothetical stating "I don't want any overhead reaching with the right upper extremity" with frequent reaching in all other directions and frequent handling with the same right upper extremity. (T. 62-63.)  The VE testified Plaintiff could perform the occupations of table worker (DOT 739.687-182), touch-up inspector (DOT 726-684-110), and document sorter (DOT 209.687-022).  (T. 64-66.)  After the hearing the ALJ sought clarification from the VE regarding the occupation of document sorter and the VE provided the alternative occupation of document preparer (DOT 249.587-018).  (T. 26, 232.)[3]

There is an apparent conflict between the reaching requirements of the occupations as defined in the DOT and the ALJ's RFC, and the conflict was not resolved at the hearing.  The occupations provided by the VE and relied on by the ALJ in making his step five determination, require frequent reaching.  (DOT 739.687-182; 726.684-110; 249.587-018).  Reaching is broadly defined as extending arms and hands in any direction.  *See* DOT, App. C; SSR 85-15.  There is no distinction in the DOT between degrees or direction of reaching, *i.e.*, above the shoulder or above the head and other types of reaching such as forward or downward.  Further, the DOT does not indicate whether the occupations require bilateral or unilateral reaching.  Therefore, the reaching requirements of the occupations provided by the VE conflict with the reaching limitations in the ALJ's RFC.

---

[3]    At the hearing, the VE provided the occupation of document sorter, DOT 209.687-022. (T. 66.)  However, the mental demands of the occupation conflicted with the ALJ's hypothetical and ultimate RFC.  (T. 26, 232.)  The VE was asked to clarify this position after the hearing and proffered the position of document preparer DOT 249.587-018.  (T. 232.)

The ALJ failed to identify and resolve the conflict.  The Second Circuit has made clear that an ALJ has an "affirmative obligation" to identify and resolve "apparent conflicts" between the *DOT* and VE testimony.  *Lockwood,* 914 F.3d at 93-94 (citing, *inter alia*, SSR 00-4p, 2000 WL 1898704, at *1, (Dec. 4, 2000) ("[O]ur adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs ... and information in the Dictionary of Occupational Titles.")).  An ALJ may not satisfy this obligation by asking the VE the "catch-all" question of whether his testimony is consistent with the *DOT.  See id.*

After the VE provided occupations available based on the ALJ's RFC hypothetical, the ALJ asked the VE if her testimony was consistent with the DOT and the VE responded it was.  (T. 64.)  The ALJ and the VE then had the following exchange:

> Q [ALJ]: All right, so let's just handle the, the physical.  If I indicated to you that the person could only occasionally reach in all directions with their dominant upper extremity, would that change your opinion as to these three jobs?
> A [VE]: You said occasionally?
> Q: Yeah, with the dominant upper extremity.
> A: Yeah, reach in all directions would change my opinion, because these jobs do require frequent reaching.
> Q: Bilaterally, right?
> A: That is correct.

(T. 65.)

To be sure, the VE testified the occupations provided would be eliminated if Plaintiff was limited to occasional reaching in all directions with the dominant upper extremity, as opposed to no overhead reaching with the dominant upper extremity.  However, the VE's testimony failed to resolve the conflict between the ALJ's RFC limitation, and the occupations provided, and the ALJ's "catch all" question did not

17

satisfy the ALJ's obligation.  *See Spears v. Colvin*, No. 15-CV-6236, 2016 WL 4973890, at *5 (W.D.N.Y. Sept. 19, 2016) ("Even if these jobs require only minimal overhead reaching, a conflict exists because the ALJ found that Spears could not do *any* overhead reaching.").

In addition, the ALJ's written decision acknowledged the DOT does not address reaching with only one extremity; however, he accepted the VE's testimony "based on their professional experience and educational background."  (T. 26.)  Contrary to the ALJ's written decision, he did not illicit this testimony at the hearing, indeed, the conflict at issue was never discussed or resolved.  *See Spears,* 2016 WL 4973890 at *4, (collecting cases) (ALJ's conclusory statement in his decision that the VE's testimony was consistent with the DOT did not satisfy ALJ's duty to identify, explain, and resolve the conflicts between the VE testimony and the DOT).  "Although this Court could guess what these occupations require in reality, it is the ALJ's duty to elicit an explanation from the VE" and "[i]f that explanation does not provide a reasonable basis for relying on the VE's testimony, then that testimony cannot provide substantial evidence for denying disability benefits."  *Spears*, 2016 WL at *5.

Therefore, it was error for the ALJ to conclude the VE's testimony was consistent with the DOT without seeking resolution of the apparent conflict from the VE and without the VE providing rationale to support any resolution.  Remand is necessary to resolve the apparent conflict between the VE testimony and the occupations as defined in the DOT.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is

**GRANTED in PART and DENIED in PART**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED in PART and DENIED in PART**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated:     April 4, 2022

*Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge